PD-0584-15

PD-0584-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/14/2015 4:20:00 PM
Accepted 5/15/2015 11:47:13 AM
ABEL ACOSTA
CLERK

NO. PD-_____-15

IN THE TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

HENRY GONZALES, JR.,
Petitioner

V.

THE STATE OF TEXAS,
Respondent

**PETITION FOR DISCRETIONARY REVIEW**

OF THE DECISION OF
THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS
ON APPEAL FROM THE JUDGMENT RENDERED BY
THE 299TH JUDICIAL DISTRICT COURT
OF TRAVIS COUNTY, TEXAS
CRIMINAL ACTION NO. D-1-DC-12-904023
HONORABLE KAREN SAGE, JUDGE PRESIDING

**ORAL ARGUMENT REQUESTED**

FILED IN
COURT OF CRIMINAL APPEALS

May 15, 2015

ABEL ACOSTA, CLERK

RICHARD D. REED
316 W. 12th Street, Suite 313
Austin, Texas 78701-1820
512-322-9443
rick.reed@maverickcounsel.com
State Bar No. 16686100
LEAD COUNSEL FOR PETITIONER

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**Trial Court Judge:**  **Hon. Karen Sage, Judge**
299th Judicial District Court
509 West 11th Street, 8th Floor
Austin, Texas 78701-2103

**Petitioner:**  **Henry Gonzales, Jr.**
Mark W. Stiles Unit
3060 FM 3514
Beaumont, Texas 77705-7635

**Trial Counsel for Petitioner:**  **Richard D. Reed**
Law Office of Rick Reed
316 W. 12th Street, Suite 313
Austin, Texas 78701-1820

**Hipolito 'Polo' Gonzalez, III**
Hipolito Gonzalez Law Firm, P.C.
1411 West Avenue, Suite 100
Austin, Texas 78701-1537

**Appellate Counsel for Petitioner:**  **Richard D. Reed**
Law Office of Rick Reed
316 W. 12th Street, Suite 313
Austin, Texas 78701-1820

**Respondent:**  **The State of Texas**

**Trial Counsel for State:**  **Mona Shea**
Travis County District Attorney's Office
509 West 11th Street, Suite 1.100
Austin, Texas 78701-2103

**Christopher H. Baugh**
Travis County District Attorney's Office
509 West 11th Street, Suite 1.100
Austin, Texas 78701-2103

**Appellate Counsel for State:**      **Georgette Hogarth**
Travis County District Attorney's Office
509 West 11th Street, Suite 1.100
Austin, Texas 78701-2103

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, AND COUNSEL ................................................ ii

INDEX OF AUTHORITIES ........................................................................ v

STATEMENT REGARDING ORAL ARGUMENT ................................................ 2

STATEMENT OF THE CASE .................................................................... 2

STATEMENT OF PROCEDURAL HISTORY ................................................. 3

GROUNDS FOR REVIEW ....................................................................... 4

Is the trial court's erroneous exclusion of the following commitment question that Petitioner's trial counsel sought to ask prospective jurors during his voir dire examination of the jury panel subject to a harm analysis: If you served as a juror in a murder case, and you heard enough evidence during the trial that you were convinced that the defendant *probably* committed the offense charged, but you were not convinced *beyond a reasonable doubt* that he did so, could you follow the law and acquit him?

REASONS FOR GRANTING REVIEW ....................................................... 4

STATEMENT OF FACTS ......................................................................... 4

ARGUMENT ....................................................................................... 8

PRAYER FOR RELIEF .......................................................................... 16

CERTIFICATE OF SERVICE .................................................................. 17

CERTIFICATE OF COMPLIANCE .......................................................... 18

APPENDIX ...................................................................................... Post

# INDEX OF AUTHORITIES

**CASES**

*Arizona v. Fulminante*, 499 U.S. 279 (1991)................................................................10, 13

*Cage v. Louisiana*, 498 U.S. 39 (1990)....................................................................9, 10

*Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014)........................................2, 6

*Gonzales v. State*, 994 S.W.2d 170 (Tex. Crim. App. 1999)..............................2, 6, 9, 10

*Homan v. State*, 662 S.W.2d 372 (Tex. Crim. App. 1984)........................................10

*In re Winship*, 397 U.S. 358 (1970) .......................................................................10

*Jones v. State*, 223 S.W.3d 379 (Tex. Crim. App. 2007) ...........................................2

*Morgan v. Illinois*, 504 U.S. 719 (1992)...................................................................16

*Nunfio v. State*, 808 S.W.2d 482 (Tex. Crim. App. 1991)..........................................2

*Rose v. Clark*, 478 U.S. 570 (1986)....................................................................12, 13

*Sullivan v. Louisiana*, 508 U.S. 275 (1993) .................................9, 10, 11, 12, 13, 14, 15, 16

**RULES**

TEX. R. APP. P. 44.2..................................................................................................6

TEX. R. APP. P. 66.3(b)..........................................................................................6, 7

NO. PD-_____-15

---

IN THE TEXAS COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

---

HENRY GONZALES, JR.,
Petitioner

V.

THE STATE OF TEXAS,
Respondent

---

**PETITION FOR DISCRETIONARY REVIEW**

---

OF THE DECISION OF
THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS
ON APPEAL FROM THE JUDGMENT RENDERED BY
THE 299TH JUDICIAL DISTRICT COURT
OF TRAVIS COUNTY, TEXAS
CRIMINAL ACTION NO. D-1-DC-12-904023
HONORABLE KAREN SAGE, JUDGE PRESIDING

---

TO THE HONORABLE JUDGES OF SAID COURT:

NOW COMES Petitioner, Henry Gonzales, Jr., by and through his attorney of record, Richard D. Reed, and, pursuant to the provisions of Rule 66, Texas Rules of Appellate Procedure, *et seq.*, hereby petitions this Court to review the decision of the court of appeals affirming the judgment rendered by the trial court in the above-referenced criminal action.

## STATEMENT REGARDING ORAL ARGUMENT

This case presents significant issues of state and federal constitutional law, the resolution of which potentially affects every murder case tried before a jury in this state. Oral argument would be helpful because the issues presented are similar to, but nevertheless fundamentally distinguishable from, certain questions that this Court has previously addressed. *See, e.g.*, *Nunfio v. State*, 808 S.W.2d 482 (Tex. Crim. App. 1991), *Gonzales v. State*, 994 S.W.2d 170 (Tex. Crim. App. 1999), *Jones v. State*, 223 S.W.3d 379 (Tex. Crim. App. 2007), and *Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014). Accordingly, the proper resolution of such issues will require a thorough understanding of how they differ from questions that this Court has previously addressed. Oral argument can facilitate such an understanding.

## STATEMENT OF THE CASE

On March 12, 2012, a Travis County grand jury issued an indictment in the above-referenced criminal action charging Petitioner, as a habitual felony offender, with the first-degree felony offense of murder. C.R. at 1–2.[1] On August 27, 2012, the 299th Judicial District Court of Travis County empaneled a jury for trial of the aforesaid criminal action, and Petitioner subsequently entered a plea of "not guilty" to

---

[1] As used herein, "C.R." refers to the clerk's record, and "R.R." refers to the reporter's record.

the aforesaid charge. C.R. at 72–80, 153; III R.R. at 177; IV R.R. at 18–23. C.R. at 72–80; III R.R. at 177.

On August 31, 2012, the jury convicted Petitioner of the aforesaid charge, and the trial court thereupon held a hearing before the jury to determine Petitioner's punishment. C.R. at 153; VII R.R. at 110–111, 113–122, 126–136. At the conclusion of the punishment hearing, the jury returned a verdict finding the enhancement allegations set forth in the indictment to be true and assessing Petitioner's punishment at imprisonment in the Texas Department of Criminal Justice for life. C.R. at 137; VII R.R. at 146.

On September 4, 2012, Petitioner filed a motion for new trial with the trial court. C.R. at 171–172; VIII R.R. at 1, 8. On January 9, 2013, Petitioner filed a written notice of appeal with the trial court.[2]

## STATEMENT OF PROCEDURAL HISTORY

On December 4, 2014, the Court of Appeals for the Third District of Texas

---

[2] On September 5, 2012, the trial court entered an order removing Petitioner's trial counsel as his attorney of record in the case below and appointing another attorney to represent him in all post-conviction proceedings related thereto. That order effectively divested Petitioner's trial counsel of the authority to file a notice of appeal on behalf of Petitioner, prompting him to file a petition for writ of mandamus with the Court of Appeals for the Third District of Texas seeking vacation of the order. C.R. at 335–386. The court of appeals subsequently dismissed the petition as moot after Judge Bob Perkins, who was assigned to the case below after the trial judge recused herself, signed an order granting Petitioner's motion to set aside the trial court's order removing his trial counsel as his attorney of record in the case below. *In re Gonzales*, No. 03-12-00611-CV (Tex. App.—Austin Jan. 17, 2013, no pet.) (mem. op. not designated for publication).

issued a memorandum opinion affirming the judgment of the trial court. On December 19, 2014, Petitioner filed a motion for rehearing, which was subsequently denied on March 25, 2015. On April 9, 2015, Petitioner filed a motion for en banc reconsideration, which was denied on April 14, 2015.

## GROUNDS FOR REVIEW

Is the trial court's erroneous exclusion of the following commitment question that Petitioner's trial counsel sought to ask prospective jurors during his voir dire examination of the jury panel subject to a harm analysis: If you served as a juror in a murder case, and you heard enough evidence during the trial that you were convinced that the defendant *probably* committed the offense charged, but you were not convinced *beyond a reasonable doubt* that he did so, could you follow the law and acquit him?

## REASONS FOR GRANTING REVIEW

The court of appeals has erroneously decided important questions of state and federal law that have not been, but should be, settled by this Court. TEX. R. APP. P. 66.3(b).

## STATEMENT OF FACTS

During his voir dire examination of the jury panel, Petitioner's trial counsel sought to ask each prospective juror the following commitment question: "Let's suppose that you serve on a jury in a criminal case, the charge is murder, […] and you have heard enough evidence that you think that he or she probably did do it, […]

4

You're convinced that it is more likely than not that he did commit the murder, but you are not convinced beyond a reasonable doubt. If you found yourself in that situation, could you follow the law and acquit the person on trial?" III R.R. at 141–44.

The lead prosecutor objected that the foregoing question constituted "an improper commitment question." III R.R. at 144. The trial court carefully avoided expressly ruling upon the objection and instead articulated a different question that it deemed "the proper question," i.e., "will you follow the law and hold the State to its standard of beyond a reasonable doubt," "are you going to hold the State to its standard of beyond a reasonable doubt." *Id.* Petitioner's trial counsel, however, demurred to the trial court's suggestion that he ask the judicially-approved question and informed the court, "I'm asking that I be permitted to ask them whether they can follow the law and acquit if they are not convinced beyond a reasonable doubt of this man's guilt." *Id.* The trial court responded equivocally, "That's fine. Yes," prompting Petitioner's trial counsel to inquire, "Is the Court instructing me that I'm not permitted to ask that question?" The trial court then unequivocally replied, "Yes." III R.R. at 144–145.

In his first point of error on appeal, Petitioner contended that "[t]he trial court committed reversible error in prohibiting defense counsel from asking the prospective jurors whether they could follow the law and acquit someone charged with murder if

5

they were not convinced beyond a reasonable doubt that he had committed the offense charged." App. Br. at 29–30. The court of appeals concluded that defense counsel's question "was proper because it sought to determine whether the venire members could follow the law by committing to an acquittal if they were not convinced beyond a reasonable doubt of [Petitioner's] guilt and because it did not include any additional facts beyond those required for this legal requirement." *Gonzales v. State*, No. 03-12-00620-CR, slip op. at 3 (Tex. App.—Austin Dec. 4, 2014) (mem. op. not designated for publication). Consequently, the court of appeals held that the trial court abused its discretion in prohibiting Petitioner's trial counsel from asking the question. *Id.* However, in apparent reliance upon this Court's opinion in *Gonzales v. State*, 994 S.W.2d 170 (Tex. Crim. App. 1999), the court of appeals went on to conduct a harm analysis under Rule 44.2 of the Texas Rules of Appellate Procedure. *Id.*

After concluding that Petitioner's trial counsel "was not entirely precluded from discussing and explaining the beyond-a-reasonable-doubt standard," the court of appeals, relying upon dicta contained in this Court's opinion in *Easley v. State*, 424 S.W.3d 535, 541–42 (Tex. Crim. App. 2014), reviewed the trial court's erroneous exclusion of his question under the non-constitutional harm standard set forth in Rule 44.2(b), which provides that any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *Gonzales*, slip op.

6

at 4–5; TEX. R. APP. P. 44.2(b). Then, following the guidelines suggested in *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005), the court of appeals considered the trial court's voir dire error in the context of the following factors: Petitioner's "ability to generally pursue the issue of reasonable doubt during voir dire,"[3] the trial court's jury instructions, the evidence of Petitioner's guilt, which the court characterized as "overwhelming," and certain remarks made by Petitioner's trial counsel during closing argument suggesting that the prosecutors had "proven that [Petitioner] probably did kill [the deceased], but they didn't prove beyond a reasonable doubt that he did." The court concluded that when viewed in context of the aforesaid factors, "the trial court's error in prohibiting defense counsel from asking his one preferred voir-dire question did not have a substantial and injurious influence in determining the jury's verdict." *Gonzales*, slip op. at 5. Consequently, the court overruled the point of error that gives rise to the grounds for review presented in this petition. *Id.*

---

[3] The court of appeals erroneously concluded that defense counsel "was allowed to elicit the same general information as that likely to be gleaned from his preferred question." As Petitioner pointed out in his briefs filed with the court of appeals, obtaining a definitive commitment from every prospective juror in a murder case that he or she could follow the law and acquit the defendant if he or she were convinced from the evidence that the defendant *probably* committed the offense, but he or she were not convinced *beyond a reasonable doubt* that the defendant did so, elicits substantially more information from such prospective juror than the abstract and purely-conceptual question, "[A]re you going to hold the State to its standard of beyond a reasonable doubt[?]" *See* App. Br. at 55–61, App. R. Br. at 15–24.

7

# ARGUMENT

When the court of appeals affirmed the judgment rendered by the trial court in the above-referenced criminal action, it erroneously decided important questions of state and federal law that have not been, but should be, settled by this Court. TEX. R. APP. P. 66.3(b). The issue presented in Petitioner's first point of error on appeal was not whether the erroneous exclusion of his trial counsel's voir dire question had a substantial and injurious influence upon the jury's deliberations. Rather, it was whether the error precluded Petitioner's trial counsel from ensuring that each person who ultimately served as a juror was legally qualified to serve *vis-à-vis* the constitutionally-mandated standard of proof beyond a reasonable doubt that jurors are required to apply in every criminal case. Any prospective juror who would convict someone of murder merely because he or she were convinced from the evidence that the defendant *probably* committed the offense would be legally disqualified from serving as a juror in a murder case.

The question that Petitioner's trial counsel sought to ask was intended to trigger genuine, soul-searching responses from the prospective jurors, asking them to imagine serving on a jury where the person on trial was charged with murder; to imagine that they had heard enough evidence that they were convinced that the defendant *probably* committed the murder but they were not convinced *beyond a reasonable doubt* that he

8

had done so, and then to say whether they could follow the law and acquit the person on trial. It was a carefully-worded, hypothetical question designed to compel each prospective juror to solemnly consider the State's burden of proof and search his or her conscience and decide whether he or she could really follow the law and acquit someone charged with murder in such a circumstance. Had defense counsel been permitted to ask that question and elicit truthful answers from each member of the jury panel, he undoubtedly would have obtained valuable information that would have assisted him in intelligently exercising his peremptory challenges and challenges for cause. In stark contrast to the question that defense counsel sought to ask, the one that the trial court permitted him to ask was categorically different; it was purely conceptual and required no such soul-searching. As a result, defense counsel was unable to glean any such information from any member of the panel.

This Court has previously observed that the United States Supreme Court has "never held that erroneously restricting proper questions during jury voir dire is structural error of a federal constitutional nature." *Gonzales*, 994 S.W.2d at 171. However, *Sullivan v. Louisiana*, 508 U.S. 275 (1993), one of the cases cited in *Gonzales* where the Supreme Court found a structural error, involved an issue remarkably similar to the one presented in the case at bar. In *Sullivan*, the trial court had given the jury a definition of "reasonable doubt" that was, as the State had conceded below, "essentially identical to the one held unconstitutional in *Cage v. Louisiana*, 498 U.S. 39

9

(1990)(per curiam)." *Sullivan*, 508 U.S. at 277.  According to the Supreme Court's opinion in *Cage*, "a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof *below that required by the Due Process Clause*." *Cage*, 498 U.S. at 41 (*emphasis added*).

The error committed by the trial court in the case below is categorically immune to a harmless error analysis because it constitutes structural error of a federal constitutional nature tantamount to the error committed by the trial court in *Sullivan v. Louisiana*, 508 U.S. 275 (1993).[4]  The burden of the State to prove each and every element of the offense charged beyond a reasonable doubt applies to every criminal case.  *Homan v. State*, 662 S.W.2d 372, 374 (Tex. Crim. App. 1984), *citing In re Winship*, 397 U.S. 358 (1970).  It need not be raised by any evidence; it is raised by the mere presentment of an indictment.  It necessarily follows that the right of a defendant to an acquittal if the State fails to sustain its burden also applies to every criminal case.  Consequently, conducting a harm analysis would not make sense here, where the question that was erroneously excluded sought to ensure that each person who

---

[4] In a footnote to the *Gonzales* opinion, the Court of Criminal Appeals observed,

> "Structural" error as explained in *Arizona v. Fulminante*, is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, [499 U.S. 279, 309] (1991).  The United States Supreme Court has found structural errors only in a very limited class of cases. . . . *Sullivan v. Louisiana*, [508 U.S. 275] (1993) (erroneous reasonable-doubt instruction to jury).

*Gonzales v. State*, 994 S.W.2d 170, at n. 4.

10

ultimately served as a juror was capable of applying the constitutionally-mandated standard of proof beyond a reasonable doubt, a rule involving a fundamental right that applies to the trial of every criminal case.

In addressing the harm of the error in *Sullivan*, the Supreme Court stated that "[a]lthough most constitutional errors have been held amenable to harmless error analysis, [internal citation omitted] some will always invalidate the conviction." *Sullivan*, 508 U.S. at 279. In concluding that the error committed by the trial court in that case fell within the latter category, the Supreme Court reasoned that there had been no jury verdict within the meaning of the Sixth Amendment because the verdict that was actually rendered was based upon an unconstitutional definition of "reasonable doubt." *Sullivan*, 508 U.S. at 280. Essentially, the Supreme Court held that, although the jury had rendered a *de facto* verdict of "guilty," it had not rendered a *de jure* verdict of "guilty" because its verdict was based upon a constitutionally-deficient definition of "reasonable doubt" that permitted it to convict the appellant upon a degree of proof that fell below what was required by the Due Process Clause. Having concluded that there was "no jury verdict of guilty beyond a reasonable doubt," the Supreme Court concluded, "[t]here is no *object*, so to speak, upon which harmless error scrutiny can operate." *Sullivan*, 508 U.S. at 280 (*italics in original*).

This case presents essentially the same issue as the one presented in *Sullivan*. Both cases involve constitutional errors relating to the standard of proof that the

11

State is required to meet before a jury may convict anyone accused of a criminal offense. The errors simply occurred at opposite stages of the proceedings. In *Sullivan* the error occurred at the conclusion of the trial, when the jury retired to deliberate with a constitutionally-deficient instruction of "reasonable doubt." *Sullivan*, 508 U.S. at 277. In this case, the error occurred at the beginning of the trial, when the trial court prohibited defense counsel from properly examining the prospective jurors to ensure that each of them was qualified to follow the constitutionally-mandated standard of proof that would ultimately govern their deliberations. III R.R. at 142-45.

In *Sullivan*, the Supreme Court concluded that the error committed by the trial court constituted a structural error that was not subject to a harm analysis for two reasons. First, the court noted that *Chapman v. California*, 386 U.S. 18 (1967), the opinion wherein the court had rejected the proposition that all constitutional errors in the course of a criminal trial require reversal, instructed appellate courts to consider "not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." *Sullivan*, 508 U.S. at 279. Citing *Rose v. Clark*, 478 U.S. 570, 578 (1986), the court stated:

> [T]he essential connection to a "beyond a reasonable doubt" factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings. A reviewing court can only engage in pure speculation — its view of what a reasonable jury would have done. And when it does that, "the wrong entity judge[s] the defendant guilty."

12

*Sullivan*, 508 U.S. at 281 (*italics in original*). Because the error in that case precluded a jury verdict finding the defendant guilty beyond a reasonable doubt, the court concluded that there was no jury verdict to consider in conducting a harm analysis. *Sullivan*, 508 U.S. at 280.

The Supreme Court concluded that "[a]nother mode of analysis [led] to the same conclusion that harmless error analysis [did] not apply" in that case. *Sullivan*, 508 U.S. at 281. The court noted that in *Arizona v. Fulminante*, 499 U.S. 279 (1991), the court had distinguished between "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards," and "trial errors which occur during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented." *Id.* The court went on to observe as follows:

> Denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly an error of the former sort, the jury guarantee being a "basic protection[n]" whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function, *Rose*, supra, 478 U.S. at 577. The right to trial by jury reflects, we have said, "a profound judgment about the way in which law should be enforced and justice administered." *Duncan v. Louisiana*, 391 U.S. at 155. *The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."*

*Sullivan*, 508 U.S. at 281–282 (*emphasis added*).

Like the errors in *Fulminante* and *Sullivan*, the error in this case constitutes a "defect affecting the framework within which the trial proceed[ed], rather than simply

13

an error in the trial process itself." *Fulminante*, 499 U.S. at 310; *Sullivan*, 508 U.S. at 282 (Rehnquist, C.J., concurring). It simply occurred at a different stage of the proceedings, i.e., during the *constitution*, rather than the *instruction*, of the jury. Whereas the trial in *Sullivan* presumably began with twelve jurors who had been properly qualified on their ability to acquit the defendant in the event that they had a reasonable doubt as to his guilt but ended with those same jurors being governed by a constitutionally-deficient definition of "reasonable doubt," the trial in this case ended with the jurors being properly instructed about their duty to acquit Petitioner in the event that they had a reasonable doubt as to his guilt, but it began with twelve jurors who had not been properly qualified—at least to Petitioner's satisfaction—on their ability to acquit Petitioner under such circumstances. Both errors relate to the same issue: the constitutionally-mandated standard of proof that the State must always meet before a jury may convict someone accused of a criminal offense. Both errors defy analysis by 'harmless error' standards" because their consequences "are necessarily unquantifiable and indeterminate." Moreover, the risks inherent in both errors are identical: one or more of jurors might acquiesce in a verdict of "guilty" after applying a constitutionally-impermissible standard of proof.

Considering the depth and breadth of public familiarity with the long-established principle of American jurisprudence forbidding the conviction of anyone accused of a criminal offense except upon proof beyond a reasonable doubt, it is

14

conceivable that all twelve jurors who convicted the appellant in *Sullivan* disregarded the constitutionally-deficient definition of "reasonable doubt" given to them by the trial court and applied the correct standard of proof instead. However, because it found the consequences of such an error to be "necessarily unquantifiable and indeterminate," the Supreme Court concluded that it had no way of assuring itself that none of the jurors reached his or her verdict based upon the constitutionally-deficient definition. *Sullivan*, 508 U.S. at 281–282. Consequently, the court held that such an error is structural, requiring automatic reversal. *Id.*

The same can be said of the error committed in the case below. While it is conceivable that all twelve jurors who convicted Petitioner were willing and able to acquit him in the event that they had a reasonable doubt as to his guilt, the court of appeals had no way of assuring itself of that fact because the trial court prohibited defense counsel from asking them, before they were empaneled, if they could follow the law and acquit Petitioner in the event that they were convinced that he probably committed the offense charged but they were not convinced of his guilt beyond a reasonable doubt. Like the error considered in *Sullivan*, the consequences of the trial court's error in this case are "necessarily unquantifiable and indeterminate." The possibility that even one person who served on the jury that convicted Petitioner was unwilling, unable, or indisposed to follow the law and acquit him in the event that such person was convinced that he probably committed the offense charged but was

15

not convinced of his guilt beyond a reasonable doubt invalidates the verdict that was eventually rendered. *See Morgan v. Illinois*, 504 U.S. 719, 729 (1992).

If even one such person served on the jury that convicted Petitioner, it would taint Petitioner's conviction just as the erroneous definition of "reasonable doubt" given to the jury in *Sullivan v. Louisiana*, 508 U.S. 275 (1993), tainted the conviction rendered therein. It would mean that the verdict that was rendered did not constitute a unanimous verdict of "guilty beyond a reasonable doubt" because at least one member of the jury acquiesced in the verdict without being governed by the only constitutionally-acceptable standard of proof for a criminal case: proof beyond a reasonable doubt. *See Sullivan v. Louisiana*, 508 U.S. at 280; *Morgan v. Illinois*, 504 U.S. at 729. For the foregoing reasons, this Court should grant this petition for discretionary review, reverse the judgment of the court of appeals, and remand the case for a new trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Petitioner respectfully prays that this Court grant his petition for discretionary review and, upon reviewing the decision of the court of appeals, reverse the judgment of the court of appeals affirming the judgment rendered by the trial court in the above-referenced criminal action, and remand the case for a new trial.

16

Respectfully submitted,

_Rick Reed_ (signature)

_____

RICHARD D. REED
316 W. 12th Street, Suite 313
Austin, Texas 78701-1820
512-322-9443
rick.reed@maverickcounsel.com
State Bar No. 16686100
LEAD COUNSEL FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that on this, the fourteenth, day of May, A.D. 2015, I personally served a copy of the above-and-foregoing Petition for Discretionary Review upon Rosemary Lehmberg, District Attorney of Travis County, Texas, whose address is 509 West 11th Street, Suite 1.100, Austin, Texas 78701-2103, by electronically delivering a copy of the said petition to the following email address: appellatetcda@traviscountytx.gov.

I further certify that on this, the fourteenth, day of May, A.D. 2015, I personally served a copy of the above-and-foregoing Petition for Discretionary Review upon Lisa C. McMinn, State Prosecuting Attorney, whose address is 209 West 14th Street, Austin, Texas 78701-1614, by electronically delivering a copy of the said petition to the following email address: lisa.mcminn@spa.texas.gov.

_Rick Reed_ (signature)

_____

Richard D. Reed

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), Texas Rules of Appellate Procedure, I hereby certify that the above-and-foregoing Petition for Discretionary Review contains a total of 2,305 words exclusive of the caption, identity of judge, parties, and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

Richard D. Reed

18

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00620-CR

**Henry Gonzales, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. D-1-DC-12-904023, HONORABLE KAREN R. SAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant was convicted of murder and sentenced to life imprisonment. He appeals his conviction in seven points. We will affirm the trial court's judgment.

## FACTUAL BACKGROUND

Appellant was charged with murder after Mary Rivas was found deceased on the porch of her boyfriend's home. At trial, the medical examiner testified that Rivas had been killed in an assault by intentionally inflicted stab wounds. Rivas's boyfriend, Ruben Gonzales (appellant's brother), testified that he had been staying at the hospital during the time frame in question and that Rivas had called him at the hospital from his home phone the night before her body was found. Ruben testified that during the phone call, he could hear appellant's voice in the background, demanding to talk to him. He further testified that at one point during the phone call he heard Rivas say "mother fu—," but that before she finished the curse word, the call was abruptly disconnected.

Ruben testified that this was the last contact he had with his girlfriend before his daughter found Rivas's deceased bloody body on the porch the following day. No other witnesses testified to the events of that evening.

Appellant did not testify at trial, but in a video recording that was shown to the jury, he admitted to police detectives during a custodial interrogation that he had been drinking and smoking crack at Ruben's house with Rivas on the night in question and that, although he did not remember stabbing her, he did remember standing over her bloody body at some point after he and the deceased had an argument. Evidence showed that appellant sustained two cuts on the fingers of his left hand during the evening in question and that drops of his blood were found throughout the living room and kitchen of Ruben's house as well as progressing along several blocks of sidewalk and ceasing at a water faucet outside a gas station. A bloody six-inch knife was found behind a dumpster near the gas station, and DNA testing confirmed that the blood on the knife belonged to both the deceased and appellant.

## DISCUSSION

Appellant's first issue asserts that the trial court erred in prohibiting defense counsel from asking the following question during voir dire: "You're convinced that it is more likely than not that [the defendant] did commit the murder, but you are not convinced beyond a reasonable doubt. If you found yourself in that situation, could you follow the law and acquit the person on trial?" The State objected that this was an improper commitment question, to which the trial court responded that it would allow proper questions such as, "Will you hold the State to its standard of beyond a reasonable doubt?" and "Do you have a problem with that standard in that circumstance?"

2

Appellant explained that the question he sought to ask was "Whether [the venire] can follow the law and acquit if they are not convinced beyond a reasonable doubt of this man's guilt?" Appellant then inquired whether the trial court was instructing him that he was not permitted to ask that question, to which the trial court replied, "Yes." Defense counsel then asked a rephrased question about reasonable doubt, to which the State did not object.

Both the State and appellant agree that appellant sought to ask a commitment question, and we concur. *See Standefer v. State*, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001) (commitment question binds prospective juror to verdict or asks prospective juror to refrain from resolving issue, based on one or more facts contained in question). The point of contention is whether the commitment question was proper. *Id.* at 181-82. We conclude that the question was proper because it sought to determine whether the venire members could follow the law by committing to an acquittal if they were not convinced beyond a reasonable doubt of appellant's guilt and because it did not include any additional facts beyond those required for this legal requirement. *See id.*; *Caton v. State*, 66 Tex. Crim. 473, 475 (1912) (holding as proper questions substantively same as question here); *see also Fuller v. State*, 363 S.W.3d 583, 588 n.28 (Tex. Crim. App. 2012) (prospective juror would be challengeable for cause if she equated proof beyond reasonable doubt with preponderance of evidence or clear and convincing evidence). Accordingly, the trial court abused its discretion in prohibiting defense counsel from asking the question. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Howard v. State*, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996). Having determined that the trial court erred, we must conduct a harm analysis. *See* Tex. R. App. P. 44.2.

3

While defense counsel was prohibited from phrasing his preferred query in one particular way, he was not entirely precluded from discussing and explaining the beyond-a-reasonable-doubt standard. Therefore, we will review the harm under the non-constitutional-harm analysis, as the limitation that the trial court placed on defense counsel's preferred voir dire was not "so substantial" as to rise to the level of constitutional error. *Easley v. State*, 424 S.W.3d 535, 541-42 (Tex. Crim. App. 2014) (where defense counsel was not foreclosed from explaining concept of "beyond a reasonable doubt," error was non-constitutional); *Woods v. State*, 152 S.W.3d 105, 109 (Tex. Crim. App. 2004) (denial of proper question in voir dire assessed as non-constitutional error). Accordingly, we will consider whether appellant's substantial rights were affected thereby and disregard the error if they were not. Tex. R. App. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (substantial right is affected when error has substantial and injurious effect or influence in determining jury's verdict).

Besides the fact that appellant was allowed to elicit the same general information as that likely to be gleaned from his preferred question, the jury was instructed in the charge that "[t]he prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant" and that "[i]n the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit the defendant." This charge properly instructed the jury on the burden of proof beyond a reasonable doubt and the circumstances under which they must acquit appellant. Furthermore, this instruction contained substantively the same information as that included in appellant's preferred voir-dire question.

4

Absent evidence to the contrary, which we do not have, we presume the jury followed the trial court's instructions. *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). On this record and in light of this presumption, we conclude that the voir-dire error did not have a substantial and injurious influence on the jury's verdict because the jury was charged with the very same duty appellant earlier sought to address in voir dire.

Additionally, the evidence of guilt was overwhelming, considering the physical and DNA evidence; the testimony of Ruben, the medical examiner, and the detectives; and appellant's own statements during his custodial interview. In light of the evidence, the voir-dire error would have had little, if any, influence on the jury's deliberations.

Finally, we note that in closing argument, defense counsel revisited the State's burden of proof and his preferred presentation of that topic by submitting to the jury that the State had "proven that [the defendant] *probably* did kill [the deceased], but [it] didn't prove beyond a reasonable doubt that he did." (Emphasis added.) Furthermore, the jury charge specifically ordered the jury that its verdict must be unanimous and must reflect the individual verdict of each juror rather than a "mere acquiescence in the conclusion of the other jurors." When viewed in context of the overwhelming evidence of appellant's guilt, the trial court's jury instructions, and appellant's ability to generally pursue the issue of reasonable doubt during voir dire, we conclude that the trial court's error in prohibiting defense counsel from asking his one preferred voir-dire question did not have a substantial and injurious influence in determining the jury's verdict. Accordingly, we overrule appellant's first issue.

5

We next address appellant's complaint that the trial court erred in denying his request for a self-defense instruction in the jury charge.[1]  *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) (defendant is entitled to instruction on self-defense if issue is raised by evidence).  The State responds, as it did at trial, that there was no evidence on the essential element of the offense requiring that the victim be the first aggressor.[2]  *See* Tex. Penal Code §§ 9.31, .32.  Based on our review of the record, we agree.

The only evidence to which appellant points as allegedly raising the defense is (1) two cuts he sustained on the fingers of his left hand during the time of the offense and (2) an argument he allegedly had with the victim.[3]  Although appellant argues on appeal that the cuts were defensive wounds, sustained in response to the victim's first aggressive act towards him with the knife that caused her death, there is nothing in the record to support such an inference.  As the trial court correctly concluded, the cuts on appellant's hand, without more, were insufficient as a matter of law to raise the element of self-defense requiring the victim to have been the first aggressor.  *See Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007) ("raised by the

---

[1]  This is appellant's sixth issue, but for the sake of brevity, we address his points out of order.  *See* Tex. R. App. P. 47.1, 47.4.

[2]  The State also argues that appellant did not admit the underlying acts, another requirement for a self-defense instruction.  *See VanBrackle v. State*, 179 S.W.3d 708, 715 (Tex. App.—Austin 2005, no pet.).  We need not reach this argument because of our determination of the self-defense issue on the basis of first aggression.

[3]  As appellant did not testify at trial, evidence of the argument to which he refers arose only in the context of his statements to police officers during the videotaped custodial interrogation after his arrest.  It is not a requirement that a defendant testify to raise the issue of self-defense, but there must nonetheless be evidence that he believed himself to be in danger *and* of an attack or apparent attack by the victim.  *Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984).

evidence" means there is some evidence on each element of defense that, if believed by jury, would support rational inference that element is true). The argument appellant allegedly had with the victim is also insufficient, without more, to raise the defense, as an argument does not equate with an act or attempted act of violence.

Appellant's contention that he acted in self-defense against the victim's initial aggression relies on mere speculation rather than reasonable inferences that the jury could have made from the admitted evidence. *See Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007) ("Speculation . . . about the possible meaning of facts and evidence . . . is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt."). The trial court did not err in ruling that the evidence did not raise the issue of self-defense and in not giving an instruction accordingly. *See Shaw*, 243 S.W.3d at 657-58. We overrule appellant's sixth issue.

Appellant's fourth issue asserts that the trial court erred in excluding evidence of the victim's criminal history allegedly demonstrating her character for violence, specifically evidence that she had previously threatened an Austin peace officer with a knife when he arrested her for prostitution and for which she was convicted of assault eleven years prior to her murder. However, while evidence of a pertinent character trait of the victim of a crime offered by the defendant is admissible, such evidence must generally be in the form of opinion or reputation testimony. *See* Tex. R. Evid. 404(a)(2); *Ex parte Miller*, 330 S.W.3d 610, 619 (Tex. Crim. App. 2009); *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the victim to show action in conformity therewith. Tex. R. Evid. 404(b).

7

Specific acts of violence may be admissible to show that the victim was the first aggressor but only to the extent that the acts are relevant apart from showing action in conformity with such character, for instance to prove the victim's specific intent, motive, or state of mind with respect to the offense for which the defendant is being tried. *Torres*, 71 S.W.3d at 760. However, in the context of a defendant's intent to prove that the deceased was the first aggressor, in order to introduce evidence of a specific, violent act, there must *first* be some evidence of a violent or aggressive act by the deceased that tends to raise the issue of self-defense and that the specific act may explain. *Id.* at 761; *see also Torres v. State*, 117 S.W.3d 891, 895 (Tex. Crim. App. 2003) (before defendant may introduce evidence of prior specific act that tends to explain decedent's later conduct, there must be some evidence of aggression by deceased during events that gave rise to criminal charges in case).

Thus, for the victim's criminal history to have been admissible in this case, there must have first been some evidence of her aggression that raised the issue of self-defense. As already discussed, there was not. Therefore, evidence of the victim's criminal history was not admissible, and the trial court did not abuse its discretion in excluding it. *See Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (trial court's ruling on evidentiary matter is reviewed for abuse of discretion, which does not occur if ruling is within zone of reasonable disagreement). We overrule appellant's fourth issue.

In his fifth issue, appellant argues that the trial court abused its discretion in denying his motion for continuance so that he could procure the attendance of an allegedly material witness—the peace officer whom the deceased had threatened with a knife eleven years prior. *See*

8

*Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006) (granting or denying continuance is within sound discretion of trial court); *see also* Tex. Code Crim. Proc. art. 29.13 (trial court may grant continuance "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had").

After reviewing the entire record, we conclude that appellant has not demonstrated that he was actually prejudiced by the trial court's denial of his motion for continuance. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). As already discussed, the peace officer's testimony about the assault committed by the victim would not have been admissible. Additionally, in his motion for new trial, appellant did not raise the issue of the trial court's denial of his motion for continuance and offered no affidavit from the peace officer indicating what his testimony would have been. *See* Tex. R. App. P. 21.2 (motion for new trial is prerequisite for issue on appeal when necessary to adduce facts not in record); *Flores v. State*, 18 S.W.3d 796, 798 (Tex. App.—Austin 2000, no pet.) (motion for new trial alleging facts outside record without supporting affidavits is fatally defective). A motion for new trial is ordinarily the means by which to make a showing of prejudice, *Gonzales v. State,* 304 S.W.3d 838, 843 (Tex. Crim. App. 2010), and even if the peace officer's testimony would have been admissible, appellant made no showing as to what the additional evidence would have demonstrated from which we could evaluate whether he was prejudiced. We overrule appellant's fifth issue.

Appellant's second issue complains that his rights to due process and to counsel were violated by virtue of the State's alleged withholding of exculpatory evidence prior to trial. *See*

9

*Brady v. Maryland*, 373 U.S. 83, 87 (1963). Specifically, appellant complains that the State withheld evidence of the deceased's criminal record, not disclosing it until the penultimate day of trial, despite his prior requests for exculpatory evidence and despite the court's granting of his motion for disclosure of exculpatory evidence. However, to find reversible error under *Brady*, the appellant must show that the evidence central to the *Brady* claim would have been admissible, besides making other required showings; the State does not have a duty to disclose material evidence favorable to the defense if it would be inadmissible. *See Pena v. State*, 353 S.W.3d 797, 809, 814 (Tex. Crim. App. 2011). Because, as discussed above, the evidence of the victim's prior criminal acts was not admissible, there was no reversible *Brady* error.[4] Accordingly, we overrule appellant's second issue.

In his third issue, appellant argues that the trial court erred in denying his request for a limiting instruction regarding out-of-court statements made by two homicide detectives during their custodial interrogation of him. At trial, appellant objected on the basis of hearsay to all of the declaratory statements made by the detectives and published to the jury in the form of the video recording of his interrogation.[5] Appellant argues that the detectives' statements were inadmissible hearsay, and to the extent that they were admissible for a purpose other than the truth of the matters asserted, the trial court was required to instruct the jury about the limited scope of the evidence due

---

[4] Because the issue of the inadmissibility of the victim's criminal record is dispositive, we do not reach appellant's additional allegation that the State in fact withheld the evidence.

[5] Representative of the objected-to statements was the following, made by Detective White:

> I mean, I mean when y'all were fighting, when, when you and [the deceased] were having the argument, and get—and when, when things were starting to get heated. You said that you were hitting it [i.e., smoking the crack pipe] and you went—you lost control and then the next thing you knew you were standing over her.

10

to his request for such instruction. *See* Tex. R. Evid. 105(a) (when evidence that is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, court shall restrict evidence to proper scope and instruct jury accordingly), 802 (hearsay is not admissible except as provided by statute or rules).

The record reflects that twice the State represented to the trial court that it was offering the challenged evidence for the truth of the matters asserted. We conclude that the detectives' videotaped statements were inadmissible as hearsay unless an exception applied. *See id.* R. 801 (hearsay is statement, other than one made by declarant while testifying at trial, offered to prove truth of matter asserted), 802 (hearsay is not admissible except as provided by statute or rules). Neither at trial nor on appeal has the State identified any applicable hearsay exception. Accordingly, we hold that the trial court abused its discretion in admitting the detectives' statements for all purposes, including for the truth of the matters asserted to by the detectives, instead of admitting them with an appropriate limiting instruction as appellant requested. *See id.* R. 105(a).

Having determined that the trial court erred in failing to give a limiting instruction, we must consider whether appellant's substantial rights were affected. *Jones v. State*, 119 S.W.3d 412, 424-25 (Tex. App.—Fort Worth 2003, no pet.) (failure to give limiting instruction is non-constitutional error); *see also* Tex. R. App. P. 44.2(b) (review of non-constitutional errors); *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996) (court's failure to give rule 105(a) limiting instruction is reviewed for harmless error).

Having examined the record as a whole, we have fair assurance that this error did not influence the jury or had but a slight effect. *See Routier v. State*, 112 S.W.3d 554, 577 (Tex.

11

Crim. App. 2003); *see also Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002) (in determining whether substantial rights were affected, appellate court should consider testimony and physical evidence, nature of evidence, character of alleged error, and overwhelming evidence of guilt). Most of the detectives' statements were paraphrases of appellant's own properly admitted statements that he made during the custodial interview and therefore were cumulative of that evidence. Furthermore, the statements would likely have been understood by a reasonable juror to have been relevant for a purpose other than for their truth (as the detectives did not witness the murder), such as to glean information from appellant as an investigative technique. The remaining statements by the detectives were paraphrases of statements allegedly made by Ruben during Detective White's interview with him at the hospital and were cumulative of facts contained in Ruben's trial testimony and in phone records admitted at trial. Also, both detectives and Ruben were available for cross-examination at trial.

Moreover, as already discussed, there was overwhelming evidence of appellant's guilt in the form of DNA and physical evidence, including the bloody knife containing appellant's and the victim's DNA and evidence that appellant was with the deceased at the time of the offense. After examining the entire record, we conclude that appellant's substantial rights were not affected by the trial court's error in failing to give the jury a limiting instruction about the detectives' videotaped statements, and we accordingly overrule his third issue.

Finally, appellant's seventh issue asserts that the trial court made multiple errors throughout the trial proceedings that, viewed together, cumulatively resulted in depriving him of a fair trial. Although a number of errors may be found harmful in their cumulative effect,

*Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999), the "cumulative error doctrine provides relief only when constitutional errors so 'fatally infect the trial' that they violated the trial's fundamental fairness,'" *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004).

Besides the six issues already addressed, appellant cites an additional nineteen alleged errors within this seventh issue. We have previously cautioned parties bringing cumulative-harm claims to brief each alleged error separately before discussing their cumulative effect, with appropriate citations to the record and relevant legal authority; otherwise, the party runs the risk of having the claim dismissed as multifarious. *Walls v. State*, No. 03-12-00055-CR, 2014 WL 1208017, at *5 n.2 (Tex. App.—Austin Mar. 20, 2014, no pet.) (mem. op., not designated for publication); *see also Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (concluding that single point of error asserting constitutional and statutory claims was multifarious). However, we regard appellant's true issue here to be that the trial court exhibited an improper bias or prejudice against him, depriving him of a fair trial, rather than that the cumulative effect of these multiple alleged "errors" sufficiently raised the harm level to one warranting a reversal. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Therefore, we consider whether the trial court's conduct, as reflected in the record as a whole, rises to a level displaying "deep-seated favoritism or antagonism." *See Liteky v. United States*, 510 U.S. 540, 554 (1994) (judicial remarks during course of trial that are critical, disapproving, or even hostile to counsel, parties, or their cases, ordinarily do not support bias or partiality challenge). Having viewed the record in its entirety, we conclude that the trial court's conduct—in the form of appellant's cited twenty-plus "errors" and the trial court's verbal remarks made throughout trial—do not rise to such a level. Accordingly, we overrule appellant's seventh issue.

13

## CONCLUSION

For the foregoing reasons, we overrule each of appellant's issues and affirm the trial court's judgment.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   December 4, 2014

Do Not Publish

14